IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


GENO LEWIS HAWKINS, SR.,
      Petitioner,

vs.                     Case No.: 4:16cv660/WS/EMT

JULIE L. JONES,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 (ECF No. 6). Respondent filed a Motion to Dismiss and Answer (ECF No. 23). Respondent contends the habeas petition is untimely, and Petitioner's claims have no merit (*id.*). Petitioner filed a reply addressing only the merits of his claims, not the timeliness of the § 2254 petition (ECF No. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition

of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the

opinion of the undersigned that the pleadings and attachments before the court show

that Petitioner is not entitled to relief.

I.    TIMELINESS

A one-year period of limitation applies to the filing of a habeas petition by a

person in custody pursuant to a state court judgment.  *See* 28 U.S.C. § 2244(d)(1).

The limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C)   the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C. § 2244(d)(1).

Respondent contends, and Petitioner does not dispute, that the appropriate

statutory trigger for the limitations period is § 2244(d)(1)(A), the date Petitioner's

criminal judgment became final. The judgment becomes final for purposes of § 2244(d)(1)(A) upon expiration of the 90-day period in which a defendant may seek direct review of his conviction in the United States Supreme Court. The 90-day period runs from the date of entry of the judgment sought to be reviewed. *See* Chavers v. Sec'y, Fla. Dep't of Corr., 468 F.3d 1273, 1275 (11th Cir. 2006). Federal Rule of Civil Procedure 6(a) provides that "[i]n computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event or default from which the designated period of time begins to run shall not be included." Fed. R. Civ. P. 6(a); *see also* Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (Rule 6 applies to calculation of one-year statute of limitations under AEDPA).

The state court record demonstrates that Petitioner was charged in the Circuit Court in and for Gadsden County, Florida, Case No. 2008-CF-656, with one count of sexual battery by a correctional officer (Count I) and one count of introduction of contraband into a state correctional institution (Count II) (ECF No. 23, Ex. A at 45).[1] A jury found Petitioner guilty as charged, with a specific finding that the sexual battery involved penetration (Ex. A at 65–66, Ex. B). On September 15, 2009, the

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's Motion to Dismiss and Answer (ECF No. 23). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

trial court sentenced Petitioner to a split sentence of ten (10) years in prison followed by ten (10) years of sex offender probation on Count I, with pre-sentence credit of 110 days, and a concurrent sentence of 110 days in jail, with credit for 110 days, on Count II (Ex. A 68–74, 80–86, Ex. C).

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-4856 (Ex. D). Petitioner's counsel filed a brief, pursuant to Anders v. California, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that reversible error occurred in the trial court (*id.*). Petitioner filed a pro se initial brief (Ex. E). On August 17, 2011, the First DCA affirmed the judgment per curiam without written opinion (Ex. F). Hawkins v. State, 68 So. 3d 237 (Fla. 1st DCA 2011) (Table). The mandate issued September 13, 2011 (*id.*).

Calculating the finality date in Petitioner's case, the 90-day period for seeking certiorari review in the United States Supreme Court was triggered by the First DCA's affirmance in the direct appeal, on August 17, 2011, and it expired 90 days later, on November 15, 2011. The federal statute of limitations began to run the next day, on November 16, 2011. Petitioner had one year from that date, or until November 16, 2012, to file his § 2254 petition. *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th

Cir. 2008) (limitations period should be calculated according to "anniversary method,"

under which limitations period expires on anniversary of date it began to run) (citing

Ferreira v. Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)).[2]

The time during which a properly filed application for state post-conviction or

other collateral review is pending is not counted toward the one-year federal

limitations period. *See* 28 U.S.C. § 2244(d)(2).

In Petitioner's case, Petitioner filed a motion for post-conviction relief in the

state circuit court on January 4, 2012, pursuant to Rule 3.850 of the Florida Rules of

Criminal Procedure (Ex. H).  According to the circuit court's docket, Petitioner

subsequently filed an amended Rule 3.850 motion (docketed on April 9, 2012),

another Rule 3.850 motion (docketed on April 30, 2012), a second amended Rule

3.850 motion (docketed on May 21, 2012), several notices, another Rule 3.850 motion

(docketed on August 13, 2012), and a supplemental Rule 3.850 motion (docketed on

October 5, 2012) (*see* Exs. G, H, I).  On December 11, 2012, the circuit court issued

an order dismissing the motions on the ground that they were "unreasonably long" and

---

[2] According to the docket of the state circuit court, on or about September 1, 2011, Petitioner filed a "Motion to Reverse, Remand, Expunge, and Expeditious Review" in the state circuit court (*see* Ex. G, Comprehensive Case Information System, Action Date 09/01/2011).  The circuit court dismissed the motion in an order rendered September 23, 2011 (*see id.*, Action Date 09/23/2011). Petitioner did not appeal the order (*see id.*).  This motion was filed and reached final disposition prior to the date Petitioner's conviction became "final" for purposes of § 2244(d); therefore, it does not affect calculation of the timeliness of Petitioner's § 2254 petition.

failed to comply with the oath requirements of Rule 3.850 (Ex. J). The dismissal was without prejudice to Petitioner's filing a new Rule 3.850 motion which complied with the Florida Rules of Criminal Procedure (*id.*).

On November 1, 2012, prior to issuance of the circuit court's December 11, 2012, Petitioner filed a "Motion for Immediate Response and Emergency Release" in the state circuit court (*see* Exs. G, K). He subsequently filed the following documents: a "Motion for Postconviction Relief" (docketed on January 24, 2013), a "Notice of Dishonor and Opportunity to Cure and Contest Acceptance" (docketed on February 19, 2013), a "Motion for Supplemental" (docketed on March 4, 2013), a petition for writ of habeas corpus (originally filed in the Florida Supreme Court, Case No. SC12-2254 but transferred to the circuit court on March 22, 2013), and a motion for emergency release (originally filed in the supreme court case but transferred to the circuit court on April 1, 2013, and docketed in that court on April 3, 2013) (*see id.*). In an order rendered May 2, 2013, the state circuit court issued an order stating that due to the similar substance of the motions, it considered them as a single consolidated motion (*see id.*). The court noted that Petitioner's motion blended claims which were appropriately brought pursuant to Rule 3.850, with claims directed against the Florida Department of Corrections which were properly filed in the court's civil division (*id.*).

The court also noted that the consolidated motion exceeded 50 pages and was unreasonable in length (*id.*). The court dismissed the motions without prejudice to Petitioner's filing a single motion for post-conviction relief in his criminal case, and any civil claims in the appropriate court (*id.*).

Respondent contends none of these filings were "properly filed," therefore, they did not qualify as tolling motions under § 2244(d)(2) (*see* ECF No. 23 at 5–6).

An application is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000) (footnote omitted). Generally, state rules establishing filing conditions fall within the meaning of "properly filed" under § 2244(d)(2). *See* Kearse v. Sec'y, Fla. Dep't of Corr., 736 F.3d 1359, 1364 (11th Cir. 2013) (citing Allen v. Siebert, 552 U.S. 3, 6, 128 S. Ct. 2, 169 L. Ed. 2d 329 (2007)). "Filing conditions encompass more than merely the conditions necessary 'to get a clerk to accept [a] legal petition,' and include requirements that 'often necessitate judicial scrutiny.'" Jones v. Sec'y, Fla. Dep't of

Corr., 499 F. App'x 945, 950 (11th Cir. 2012) (quoting Pace v. DiGuglielmo, 544

U.S. 408, 414–15, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005)).

In this case, the circuit court dismissed both batches of Petitioner's filings,

without prejudice to Petitioner's re-filing, because they exceeded the page limit set

forth in Rule 3.850.  The version of Rule 3.850 in effect at the time of Petitioner's

filings provided, "[t]he motion, including any memorandum of law, shall not exceed

fifty pages without leave of the court upon a showing of good cause."  *See* Fla. R.

Crim. P. 3.850(d) (formerly 3.850(c)).  The state court dismissed the first batch of

filings on the additional ground that they did not comply with Florida's oath

requirement.  *See* Fla. R. Crim. P. 3.850(c) (stating that the motion must be under

oath).

Where, as here, the Florida state court dismisses a post-conviction motion

because it did not comply with state filing rules prescribing the form of the document,

the federal courts will generally defer to that determination.  *See* Bradshaw v. Richey,

546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421

U.S. 684, 691, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *see also, e.g.,* Price v. Sec'y

Dep't of Corr., 489 F. App'x 354, 355 (11th Cir. 2012) (unpublished but recognized

as persuasive authority) (prisoner's 250-page Rule 3.850 motion did not comply with

the Rule's requirement that the motion include "a brief statement of the facts," and was thus not "properly filed" for purposes of § 2244); Fitzpatrick v. Monday, 549 F. App'x 734, 737–39 (10th Cir. 2013) (petitioner's Oklahoma state-court application for post-conviction relief was not "properly filed," and thus, was not adequate to toll federal habeas limitations period, where the state application did not comply with the state's required page limit and it was stricken by the state court as improperly filed); Rashard v. Sec'y, DOC, No. 3:14-cv-1069-J-39JRK, 2017 WL 176906, at *2 (M.D. Fla. Jan. 17, 2017) (petitioner's four motions, which the state circuit court combined and dismissed for exceeding the page limitation set forth in Rule 3.850(d), were not "properly filed" for purposes of § 2244(d)(2)); Clark v. Sec'y, Dep't of Corr., No. 5:13-cv-597-Oc-33PRL, 2015 WL 685722, at *3 (M.D. Fla. Feb. 18, 2015) (same). Cf. Jackson v. Kelly, 650 F.3d 477, 491 (4th Cir. 2011) (petitioner's submission of an oversized habeas brief and a motion to permit the extra pages to the Supreme Court of Virginia was "properly filed," because it was neither rejected nor dismissed by the Supreme Court of Virginia, and instead the state court directed petitioner to  file a "corrected petition" in a timely manner).

A post-conviction motion which is not "properly filed" under state law does not toll the federal limitations period under the AEDPA; and this is so even if the state

court accepts the motion or dismisses it without prejudice to the movant's re-filing. *See* Hurley v. Moore, 233 F.3d 1295, 1298 (11th Cir. 2000) (motion not "properly filed" even though state court dismissed it without prejudice to petitioner's re-filing properly sworn motion); *see also* Jones v. Sec'y, Fla. Dep't of Corr., 499 F. App'x 945, 948, 950–51 (11th Cir. 2012) (same).

Deferring to the state circuit court's determinations that Petitioner's post-conviction applications filed between January 4, 2012 and April 3, 2013, did not comply with the provisions of Rule 3.850 prescribing the form of the document, the undersigned concludes that none of those filings were "properly filed" and thus did not qualify for statutory tolling under § 2244(d)(2). Petitioner filed numerous documents in the state circuit court, the First DCA, and the Florida Supreme Court after April 3, 2013, but none of those applications tolled the federal limitations period, because it expired on November 16, 2012. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) (a state-court application that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled).

Petitioner's § 2254 petition was filed after the one-year federal limitations period expired. Petitioner has not shown that the application of any tolling principles

render his federal petition timely, or that he qualifies for review of his claims through any recognized exception to the time bar. Therefore, his § 2254 petition is properly dismissed as time-barred.

## II.    MERITS

Respondent contends even if Petitioner's § 2254 petition is deemed timely, his claims should be denied (ECF No. 23 at 7–17).

As an initial matter, the court does not have jurisdiction to consider Petitioner's challenges to his conviction for introduction of contraband into a state correctional institution (Count II). Habeas corpus relief is available only to those who are "in custody" in violation of the Constitution or laws of the United States. *See* 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or law or treaties of the United States") (emphasis added). This "in custody" requirement is jurisdictional. *See* Stacey v. Warden, Apalachee Corr. Inst., 854 F.2d 401, 403 (11th Cir. 1988). To satisfy the "in custody" requirement, "the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Maleng v. Cook, 490 U.S. 488, 490–91, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) (per curiam). Although courts have traditionally interpreted the "in custody"

requirement liberally to include situations where the sentence in question enhances or delays the commencement of another sentence, that circumstance does not exist here, because Petitioner's sentence on the introduction of contraband charge was fully served on the day it was imposed. The introduction of contraband sentence had no effect on the commencement of Petitioner's sentence for sexual battery—the sentence he is presently serving. As it is evident from the record that Petitioner was no longer "in custody" under the introduction of contraband conviction at the time he filed his federal habeas petition, this court is without jurisdiction to consider Petitioner's challenge(s) to that conviction and sentence. *See, e.g.*, Sweet v. McNeil, 345 F. App'x 480, 482 (11th Cir. 2009) (holding that district court lacked subject matter jurisdiction to consider ground two of petitioner's federal habeas petition, in which petitioner claimed counsel was ineffective for failing to assert a double jeopardy challenge to petitioner's convictions for simply battery and burglary with assault or battery; petitioner was no longer "in custody" on the simple battery conviction when he filed his petition; petitioner's sentences on the two charges ran concurrently, and petitioner's shorter sentence on the simple battery conviction expired prior to petitioner's filing his federal habeas petition) (unpublished but recognized as persuasive authority); Stewart v. Jones, No. 3:13cv564/MCR/CJK, 2015 WL

4619643, at *2 (N.D. Fla. July 2, 2015), *Report and Recommendation Adopted By*

2015 WL 7302263 (N.D. Fla. Nov. 18, 2015); Young v. Jones, No.

5:13cv265/WS/CJK, 2015 WL 1120133, at *2 (N.D. Fla. Mar. 12, 2015); White v.

Tucker, No. 3:10cv182/MCR/EMT, 2012 WL 2377890, at *11 (N.D. Fla. May 17,

2012), *Report and Recommendation Adopted By* 2012 WL 2377823 (N.D. Fla. June

23, 2012).

The court thus considers Petitioner's habeas claims as directed solely to his

sexual battery conviction.

Section 2254 provides:

> [a] district court shall entertain an application for a writ of habeas corpus
> in behalf of a person in custody pursuant to the judgment of a State court
> only on the ground that he is in custody in violation of the Constitution
> or laws or treaties of the United States.

28 U.S.C. § 2254(a).

It is a long-standing prerequisite to the filing of a federal habeas corpus petition

that the petitioner have exhausted available state court remedies, 28 U.S.C.

§ 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct'

---

[3] Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted unless it appears that–
    (A)   the applicant has exhausted the remedies available in the courts of the
State; or

alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. See Coleman v. Thompson, 501 U.S. 722, 734–35 & n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be

---

(B) (i)  there is an absence of available State corrective process; or
         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

procedurally defaulted under state law cannot be addressed by federal courts.");

Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

procedural bar should be enforced by federal court even as to a claim which has never

been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir.

1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498

U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal

court must determine whether any future attempt to exhaust state remedies would be

futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the

second instance, a federal court must determine whether the last state court rendering

judgment clearly and expressly stated its judgment rested on a procedural bar. *Id*. To

overcome a procedural default, the petitioner must show cause and prejudice or a

fundamental miscarriage of justice in order for the federal habeas court to reach the

merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist,

an external impediment, whether it be governmental interference or the reasonable

unavailability of the factual basis for the claim, must have prevented petitioner from

raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed.

2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L.

Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner

must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House v. Bell, 547 U.S. 518, 537, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

Within this framework, the court will review Petitioner's claims.

A.      Ground One:  "Illegal Search & Seizure."

Petitioner alleges on August 15, 2008, law enforcement officers entered his home and collected his DNA without a search warrant and without probable cause to do so, in violation of the Fourth Amendment (ECF No. 6 at 5). Petitioner admits he did not present this claim on direct appeal or in a state post-conviction application (*see id.* at 6). Petitioner states he "filed the best he could at the time" and "wishes to bring this matter in person to the court" (*id.*).

Respondent contends Petitioner did not exhaust this issue in state court, because he did not move to suppress any items in the trial court or raise the Fourth Amendment issue on direct appeal (ECF No. 23 at 11). Respondent further contends there is no procedurally proper means for returning to state court to present the claim; therefore, the claim is procedurally barred. Respondent argues Petitioner cannot satisfy the "cause and prejudice" exception to the procedural bar, because his claim is without merit. Respondent asserts FDOC Inspector Debbie Carter testified at trial that the search of Petitioner's home and collection of a buccal swab from his person was accomplished pursuant to a search warrant. Therefore, Petitioner will not suffer prejudice if this federal court does not review the merits of the Fourth Amendment claim.

In Petitioner's reply, he argues the merits of his claim. He appears to contend that the fact that a copy of the search warrant was not included in the state court record, even though the application for the <u>arrest</u> warrant and the supporting probable cause affidavit submitted by Inspector Debbie Carter was included in the official record (*see* Ex. A at 1–2), proves that the search warrant did not exist (*see* ECF No. 26 at 8–9).

Petitioner admits he did not exhaust his Fourth Amendment claim, and the state court record verifies this. To properly exhaust a Fourth Amendment challenge to a search and seizure, a Florida defendant must present the issue to the trial court in a motion to suppress, *see* <u>Tillman v. State</u>, 471 So. 2d 32, 35 (Fla. 1985), and then present the issue on direct appeal. *See, e.g.*, <u>Taylor v. State</u>, 937 So. 2d 590 (Fla. 2006); <u>Seibert v. State</u>, 923 So. 2d 460 (Fla. 2006); <u>Gordon v. State</u>, 1 So. 3d 1117 (Fla. 1st DCA 2009). Here, the trial record does not indicate that Petitioner moved to suppress the buccal swabs collected from him. Nor did Petitioner present a Fourth Amendment issue on direct appeal (*see* Ex. E). The only issue presented by Petitioner on appeal was a claim that FDOC Inspector Debbie Carter failed to properly investigate the victim's allegations of rape, because Carter failed to obtain time sheets, "key logs," "count slips," or the victim's medical records to determine if the

documents corroborated the victim's allegations (*id.*). Additionally, Petitioner could not have obtained post-conviction relief on a Fourth Amendment claim, because relief is not authorized under Rule 3.850 with regard to grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal. *See* Fla. R. Crim. P. 3.850(c).

Petitioner has not shown cause for his failure to exhaust the Fourth Amendment claim. Further, he failed to satisfy the prejudice component of the "cause and prejudice" exception, because he failed to demonstrate actual prejudice resulting from the procedural default. At Petitioner's trial, Debra Carter, a senior prison inspector with the FDOC, testified that she obtained two buccal swabs from Petitioner on August 15, 2008, after she had obtained a search warrant (Ex. B at 160–61, 219–21). The fact that the search warrant was not filed with the court does not demonstrate that it did not exist. Additionally, based upon Inspector Carter's sworn narrative submitted in support of the application for a warrant for Petitioner's arrest, there was probable cause to support issuance of the search warrant. Inspector Carter's narrative states the following, in relevant part:

> In a sworn recorded statement, dated May 27, 2008, Inmate Jessica Carroll indicated that beginning in May or June 2007, while housed at Gadsden Correctional Facility, located in Gretna, Florida, Correctional Officer Geno L. Hawkins, Sr., befriended her. Sometime in March 2008,

Inmate Carroll could not specifically recall the date; however, she recalled the time of day around 4:00 p.m., Officer Hawkins entered her dormitory and escorted her to the laundry building and inside of the officer of the officer's station. He instructed her to turn around and pull down her pants, which she compiled [sic]. He penetrated her vagina with his penis and later ejaculated semen in her mouth. The second incident of sexual intercourse occurred sometime after March, but before May 11, 2008. On May 11, 2008, around evening dinner time, she was approached by Officer Hawkins to retrieve an ice cooler from her dormitory and report to the chow hall with the cooler. Officer Hawkins, supervising the evening meal, instructed Inmate Carroll to remain in the chow hall until all of the inmates finished their meals and left. Officer Hawkins escorted Inmate Carroll to a chemcial [sic] closet located in the back of the food service area. While in the closet, Officer Hawkins penetrated her vagina with his penis and later ejaculated in her mouth. However, this time, Officer Hawkins left Inmate Carroll inside of the closet alone and she spat the seminal fluid still inside of mouth onto her white inmate t-shirt for "proof" that she was being raped by Officer Hawkins. On June 2, 2008, the white inmate t-shirt indicated by Inmate Carroll, she had worn on May 11, 2008, was submitted to the Florida Department of Law Enforcement Crime Laboratory. Preliminary results indicated the presence of seminal fluid on the t-shirt and a DNA profile was extracted.

(Ex. A at 2). Inspector Carter's sworn narrative demonstrated a fair probability that evidence of a crime would be found in the collection of Petitioner's DNA. *See* Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). Therefore, there was probable cause to support issuance of the search warrant.

Petitioner failed to show cause for the procedural default of his Fourth Amendment claim and actual prejudice resulting from the procedural default.

Therefore, he is not entitled to a federal de novo review of his Fourth Amendment claim.

B.   Ground Two:   "Counsel was Ineffective Assistant [sic] of Counsel During the Process and the Proceedings Held."

Petitioner alleges on April 7, 2009, defense counsel Barbara Hobbs presented the court with a motion for substitution of counsel (substituting the public defender's office with herself as Petitioner's retained counsel), which someone other than Petitioner signed without Petitioner's approval (ECF No. 6 at 7).

Respondent contends this issue is not cognizable on federal habeas review (ECF No. 23 at 13–14).  Respondent contends that although Petitioner couched his claim in terms of ineffective assistance of counsel, there is no federal constitutional right to sign a notice of substitution form (*id.*).  Respondent contends Petitioner was obviously aware that Attorney Hobbs was representing him as she appeared in court with Petitioner on numerous occasions, including trial (*id.*).  Respondent contends the Notice of Substitution was merely a "house keeping" form documenting who was representing Petitioner, and any alleged absence of Petitioner's written consent did not deprive him of a federal constitutional right (*id.*).

In Petitioner's reply, he contends he was denied due process by Attorney Hobbs' presenting the Motion for Substitution of Counsel to the trial court, because

the motion was deficient in the following respects: (1) counsel failed to correctly type Petitioner's name, (2) counsel failed to type the case number, (3) counsel failed to present the form to the clerk of court, and (4) counsel failed to include Petitioner's authorized signature (ECF No. 26 at 9–10). Petitioner also alleges "counsel received funds" (*id.* at 9). Petitioner contends the motion for substitution was not merely a "house keeping form," because it became an "official document of law" when the trial court granted the motion (*id.*). Petitioner includes a conclusory allegation that he was prejudiced (*id.* at 10).

Even if Ground Two presented a cognizable claim of ineffective assistance of counsel, the claim is without merit. The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

Here, counsel was not deficient simply because (1) there was a typographical error in the spelling of Petitioner's name in the style of the motion, (2) the case

number was handwritten instead of typed, and (3) the motion was apparently filed in open court instead of in the clerk of court's office (*see* Ex. A at 39–40). Further, although Petitioner alleges he did not authorize his signature on the motion, he does not allege he did not consent to Attorney Hobbs' representation. In fact, Petitioner admits Attorney Hobbs was hired to represent him. Further, the trial court docket indicates that Petitioner was present in court at a pre-trial hearing on July 8, 2009, and present with Attorney Hobbs during the jury trial on July 20–21, 2009, yet there is no evidence that Petitioner not consent to Attorney Hobbs' representation or that he expressed dissatisfaction with her representation (*see* Ex. A, Defendant Case History Detail; *see also* Ex. B). Moreover, Petitioner failed to show a reasonable probability that the outcome of his trial would have been different but/for the alleged errors in the Motion for Substitution of Counsel. Therefore, Petitioner is not entitled to federal habeas relief on Ground Two.

> C. Ground Three: "The A.V. [alleged victim] Filed a False Report."

Petitioner alleges the victim's allegations contradict the "overwhelming" evidence, including the testimony of Inspector Monical and Dr. Kitch, and documentary evidence including time sheets, "count slips," "key logs," and the victim's medical records (ECF No. 6 at 8).

Respondent again argues that Petitioner failed to show a violation of his federal constitutional rights, because there is no constitutional right to be free from allegedly false allegations (ECF No. 23 at 15). Respondent contends that to the extent Petitioner's claim is construed as a constitutional challenge to the sufficiency of the evidence, Petitioner failed to exhaust the claim because he did not present it on direct appeal (*id.*). Further, Petitioner cannot show cannot show he suffered actual prejudice from the procedural default, because the victim's testimony alone would have been sufficient to sustain his conviction under Jackson v. Virginia, 443 U.S. 307 (1979) (*id.* at 15–16).

In Petitioner's reply, he claims that the victim provided false testimony, as evidenced by the fact that the probable cause affidavit states that the victim told Inspector Carter that the three rapes occurred between March and May of 2008, but the victim testified at trial that the rapes occurred between January and May of 2008 (*see* ECF No. 26 at 10).

An allegation that a witness provided a pre-trial statement which was inconsistent with her trial testimony does not state a violation of the Constitution. Further, even if this court liberally construed Petitioner's claim as a federal constitutional challenge to the sufficiency of the evidence, Petitioner did not present

the claim in his initial brief on direct appeal (*see* Ex. E), which was the proper vehicle

for doing so under Florida law. Therefore, Petitioner failed to satisfy the exhaustion

requirement, and his claim is procedurally barred from federal review.

Notwithstanding Petitioner's failure to exhaust, his federal challenge to the

sufficiency of the evidence is without merit. As an issue of federal law, Petitioner's

claim derives from the Fourteenth Amendment due process requirement that the

evidence presented at trial be sufficient to convict, that is, the State must prove beyond

a reasonable doubt every fact that constitutes an essential element of the crime

charged against the defendant. *See* In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068,

25 L. Ed. 2d 368 (1970). When reviewing a claim of insufficient evidence in federal

habeas corpus, the proper inquiry is not whether the reviewing court itself believes

that the evidence established guilt beyond a reasonable doubt but "whether, after

viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could have found the essential elements of the crime beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560

(1979) (citation omitted); *see also* Conklin v. Schofield, 366 F.3d 1191, 1200 (11th

Cir. 2004). The evidence need not rule out every theory except that which signifies

guilt beyond a reasonable doubt; "[t]he simple fact that the evidence gives some

support to the defendant's theory of innocence does not warrant the grant of habeas relief." <u>Wilcox v. Ford</u>, 813 F.2d 1140, 1143 (11th Cir. 1987). Moreover, because jurors are free to evaluate the credibility of testimony and the weight of the evidence, the court should assume that all conflicting inferences were resolved against the defendant. <u>Wilcox</u>, 813 F.2d at 1143. "It is only where, after viewing the evidence in its most favorable light and making all credibility decisions in favor of the state the evidence still fails to at least preponderate in favor of the state, that we become concerned with conflicting inferences." <u>Cosby v. Jones</u>, 682 F.2d 1373, 1383 (11th Cir. 1982).

To prove the crime of Sexual Battery upon a Person 12 Years of Age or Older under Specified Circumstances, the State must prove the following four elements beyond a reasonable doubt:

1. the Victim, Jessica Carroll, was 12 years of age or older;

2. the Defendant, Geno L. Hawkins, committed an act upon the Victim in which the sexual organ of the Defendant penetrated or had union with the vagina or mouth of the victim;

3. the Defendant was at the time a correctional officer and the Defendant was acting in such a manner as to lead the Victim to reasonably believe that the Defendant was in a position of control or authority as an agent or employee of government;

4. The act was committed without the consent of the Victim.

(*see* Ex. A at 49).  Under Florida law, "consent" is defined as intelligent, knowing, and voluntary consent and does not include coerced submission (*see id.*).  Consent does not mean the failure by the alleged victim to offer physical resistance to the offender (*id.*).

At Petitioner's trial, the victim, Jessica Jayne Carroll, testified that she became an inmate of the FDOC in approximately April of 2007 (Ex. B at 29).  She testified she arrived at Gadsden Correctional Institution in approximately May of 2007 (*id.* at 30).  Ms. Carroll testified she her initial contact with Petitioner occurred in the day room of the prison dormitory on the date she arrived at Gadsden C.I. (*id.* at 30–31).  Ms. Carroll testified that after their initial contact, she did not have any contact with Petitioner until months later, when she was transferred to Bravo dormitory where Petitioner worked (*id.* at 31–32).  Ms. Carroll testified that Petitioner's contact with her was different than his contact with other inmates (*id.* at 33).  She testified Petitioner would frequently call her away from the other inmates and say "little things," like telling her to tuck in her shirt (*id.*).  Ms. Carroll testified that Petitioner was always friendly to her (*id.* at 34).

Ms. Carroll testified she started being called out of her cell very early in the morning to go to the medical department (Ex. B at 34).  Ms. Carroll testified that

Petitioner escorted her to the medical department, only for her to wait and then be told by medical personnel that she was not on the list to be seen (*id.* at 34–35). Ms. Carroll testified that as she was going back to the dormitory after the third erroneous call out to medical, in approximately January of 2008, Petitioner told her to put her right hand in her pocket and give him her left hand (*id.* at 36–37). Ms. Carroll testified she put her right hand in her pocket, and Petitioner grabbed her left and put it on his penis on the outside of his clothing (*id.*). Ms. Carroll testified she pulled her hand away in shock and told Petitioner she was going back to her dormitory (*id.* at 37). Ms. Carroll testified that she later filed a complaint with the institutional inspector, Inspector Monical (*id.* at 37–38). Ms. Carroll testified that Inspector Monical advised her that she needed evidence of the inappropriate behavior (*id.* at 38).

Ms. Carroll testified that after the incident involving Petitioner's crotch, Petitioner sexually assaulted her in the laundry of the prison against her will (Ex. B at 40–41). Ms. Carroll testified that Petitioner told her to remove her clothes, bend over a desk, and put her hands on the desk (*id.* at 41). Ms. Carroll testified that she complied with his directions because he was an officer, and she had to do what he told her to do, or she would get in trouble (*id.* at 41–42). Ms. Carroll testified Petitioner penetrated her vaginally from behind with his penis (*id.* at 42). Ms. Carroll testified

that Petitioner then told her to turn around and swallow his "cum" (*id.*). She testified

that Petitioner then put his hand on her shoulder, gently pushed her shoulder down,

and then put his penis in her mouth and ejaculated into her mouth (*id.*).

Ms. Carroll testified that she was sexually assaulted a second time by Petitioner

during another false call out to the medical department (Ex. B at 45–46). Ms. Carroll

testified that Petitioner escorted her to the medical department, but when they arrived

there, he told her to "hang back" instead of going inside (*id.* at 46). Ms. Carroll

testified that Petitioner took her instead to the Classifications area, where no one was

present (*id.*). Ms. Carroll testified that Petitioner walked her into a bathroom and told

her to take her pants down and bend over (*id.* at 46–47). Ms. Carroll testified that she

complied, but not because she consented to the sexual conduct (*id.* at 46). Ms. Carroll

testified that Petitioner vaginally penetrated her from behind with his penis, and then

turned her around, put his penis in her mouth, and ejaculated into her mouth (*id.* at

46–47).

Ms. Carroll testified that she was again sexually assaulted by Petitioner on

Mother's Day of 2008 in a closet of the institutional kitchen (Ex. B at 49). Ms.

Carroll testified that this time, she was wearing a dress with a shirt underneath (*id.* at

52–53). Ms. Carroll testified that Petitioner pulled up her dress and pulled down her

underwear (*id.* at 52). She testified he vaginally penetrated her from behind with his penis, and then turned her around, put his penis in her mouth, and ejaculated into her mouth (*id.* at 52–53). Ms. Carroll testified that the assault occurred just like the previous two times, except this time, Petitioner was called to a medical emergency and left the closet before she did (*id.*). Ms. Carroll testified that she spit Petitioner's ejaculate onto the shirt under her dress so she would have evidence of the assault (*id.*). Ms. Carroll testified that Petitioner left her in the closet for a few minutes and then returned and sent her back to her dormitory (*id.* at 53). Ms. Carroll testified that she cut a few pieces of material from the shirt and sent them to her mother to preserve the evidence (*id.* at 53–55). Ms. Carroll testified that she put the rest of the shirt in plastic to preserve it, and then gave it to FDOC Inspector Debbie Carter (*id.* at 53–56).

Inspector Debra Carter testified that she interviewed Jessica Carroll on May 27, 2008 (Ex. B at 153–56, 159). Inspector Carter testified that Ms. Carroll gave her a white t-shirt containing a yellow substance (*id.* at 156–57). Carter testified that she took the t-shirt into evidence and submitted it to the Florida Department of Law Enforcement ("FDLE") crime lab (*id.* at 157–58). Inspector Carter testified that the crime lab notified her that they identified the yellow substance as semen and retrieved a DNA sample (*id.* at 158). Inspector Carter testified that the lab requested that she

provide a DNA sample from the person whom she believed to be the donor, so the two samples could be compared (*id.* at 158–59). Inspector Carter testified she provided her investigative information to the State Attorney's Office and requested a search warrant to collect a DNA sample from Petitioner via a buccal swab (and to search Petitioner's home for evidence relating to the introduction of contraband charge) (*id.* at 159, 219). Inspector Carter testified that upon issuance of the search warrant, she collected the DNA sample from Petitioner and provided it to the crime lab (*id.* at 159–61, 219–21).

Mr. Chris Bacot, a forensic biologist and crime lab analyst with the FDLE, testified that he examined the t-shirt provided by Inspector Carter (Ex. B at 183–87). Bacot testified that he successfully separated the sperm cells from the yellow substance on the t-shirt and obtained a complete DNA profile consistent with a single individual male (*id.* at 187–89). Mr. Bacot testified that when he compared the DNA profile of the semen to the DNA of the buccal swabs collected from Petitioner by Inspector Carter, he determined that the DNA matched at each of thirteen DNA markers (*id.* at 189–91). Mr. Bacot testified that the frequency of occurrence of the matching profile for the Caucasian population would be 1 in 170 quadrillion individuals, for the African-American population it would be 1 in 37 quadrillion

individuals, and for the Southeastern Hispanic population it would be 1 in 210 quadrillion individuals (*id.* at 191).

Petitioner testified in his own defense. He testified that he met Jessica Carroll in September of 2007, when she was assigned to Bravo dormitory at Gadsden Correctional Institution (Ex. B at 261–63). Petitioner testified he worked the 7:00 p.m. to 7:00 a.m. shift (*id.* at 264). Petitioner testified that over the course of that month, Ms. Carroll flirted with him, propositioned him, and even lifted up her dress and "flashed" her naked genital area (*id.* at 264–70). Petitioner testified that the second week of October, he and Ms. Carroll had consensual sex in the institutional greenhouse (*id.* at 271–73). Petitioner testified that Ms. Carroll gave him oral sex, then turned around and bent over, and he penetrated her, and then he "pulled out" and she finished giving him oral sex (*id.* at 272). Petitioner testified that they again had consensual sex on November 26, 2007, in the bathroom of the classification department (*id.* at 275–79). Petitioner testified that Ms. Carroll moved out of Bravo dormitory in March of 2008 (*id.* at 281). He testified that Ms. Carroll told him that she was scheduled to be released in May and wanted to live with him (*id.* at 282–83). Petitioner testified he told Ms. Carroll that his wife would not permit it, and his relationship with her (Carroll) was just a "BC" or "booty call" (*id.*). Petitioner

testified that on May 7, 2008, he and Ms. Carroll had an argument because she again asked him again if she could stay with him, and wanted him to meet her at the bus when she was released, but he said no (*id.* at 283–84). Petitioner testified that on May 9, 2008, Ms. Carroll asked him if he would have sex with her two days later, on Mother's Day (*id.* at 285). Petitioner testified that he agreed, and they had consensual sex in a closet (*id.* at 285–88).

Viewing the evidence in the light most favorable to the prosecution, and making all credibility decisions in favor of the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, notwithstanding Petitioner's procedural default of Ground Three, he is not entitled to federal habeas relief.

D.    Ground Four:  "Magistrate T. Bateman Issued a Faulty Arrest Warrant."

Petitioner alleges on October 15, 2008, Magistrate T. Bateman issued an arrest warrant which did not include a case number and was not provided to the clerk of court. Petitioner alleges the warrant was issued based upon a probable cause affidavit prepared by Inspector Debbie Carter, who was not a member of The Florida Bar or an employee of the Second Judicial Circuit Court (ECF No. 6 at 10). Petitioner contends

these errors led to his false arrest and imprisonment, in violation of his constitutional rights.

Respondent contends that although the Constitution requires probable cause to support an arrest, it does not require a case number, or a signature from a member of the Florida Bar or a court employee, or a hearing prior to an arrest (ECF No. 23 at 16–17). Therefore, Petitioner failed to demonstrate a constitutional violation.

In Petitioner's reply, he argues that the arrest warrant, signed by Circuit Court Judge Tom Bateman, states, "Whereas Inspector Debbie Carter had made oath . . ." (ECF No. 26 at 11). Petitioner appears to argue that Inspector Carter was not qualified to give an oath, and this rendered the entire criminal case "invalid" (*id.*).

Petitioner's claim that the arrest warrant was invalid due to alleged failures to comply with state-law requirements provides no basis for federal habeas review. The scope of review of a habeas corpus petition is limited to determining whether a petitioner's custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a); Swarthout v. Cooke, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.")

(internal quotations and citations omitted); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67–68, 112 S. Ct. 475, 479–80, 116 L.Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief). The limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of a federal constitutional violation. *See* <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988).

Even if Petitioner's claim was cognizable on federal habeas review, his claim is without merit. Florida law does not require that an arrest warrant include a case number or be presented to the clerk of court prior to its issuance or execution. *See* Fla. R. Crim. P. 3.121. Additionally, the author of a probable cause affidavit does not need to be a member of The Florida Bar, a court employee, or authorized to administer oaths.

Petitioner failed to show that the arrest warrant was invalid in any respect. More importantly, he failed to show that any defect in the warrant rendered his conviction unconstitutional. Therefore, he is not entitled to federal habeas relief on Ground Four.

## III. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 580 U.S.—, 137 S. Ct. 773 (2017) (citing Miller-El, 537 U.S. at 327). The petitioner here cannot make that showing. Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party

may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the amended petition for writ of habeas corpus (ECF No. 6) be **DISMISSED** to the extent Petitioner challenges his conviction for introduction of contraband in State v. Hawkins, Escambia County, Florida, Circuit Court Case Number 2008-CF-656;

2.      That the amended habeas petition be **DISMISSED as untimely**, or alternatively **DENIED on the merits**, to the extent Petitioner challenges his conviction for sexual battery in State v. Hawkins, Escambia County, Florida, Circuit Court Case Number 2008-CF-656.

3.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 11th day of December 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**